DEN, ex dem. MOSES B. MARTIN, *vs.* WILLIAM CARRON.

1. The 34th section of the charter of the city of Newark declares that it shall be lawful, upon default of payment of the assessment, to levy the same by distress and sale of the goods of the owner or occupant of the lot assessed. The 35th section provides that if default be made in the payment of the assessment, it shall be lawful to cause the real estate assessed to be sold at auction for a term of years to satisfy the assessment. *Held*, that it was not necessary that the goods and chattels of the owner, or the occupant of the lot, should be exhausted before proceeding against the land.

2. If more land is taxed to a person than he owns, and his assessment thereby becomes higher than it should be, it does not constitute any objection to the validity of a sale of the land for such a tax.

3. Where a tax is assessed upon land for opening or widening a street, and the land is sold for such tax, the title acquired by the sale will not be affected by irregularity of the proceedings of the proper authorities in opening or widening the street or in levying the tax.

Moses B. Martin brought an action of ejectment in this court against William Carron, the tenant in possession, to recover the possession of a house and lot in the city of Newark.

The case was tried at the Essex Circuit, before a jury, at May Term, 1855.

A special verdict was taken, by which the following facts were found:

The plaintiff claimed title to the premises in question, by virtue of a sale of the same for the term of thirty years, made November 30th, 1852, by the treasurer of the city of Newark, to raise and pay the sum of three dollars and twenty cents, the amount of an assessment (with costs and expenses thereon) made against William Mulock, the then owner of the said premises, as and for his proportion, as such owner, of the expenses incurred by the common council of the city of Newark in laying out and opening a certain street in said city, by virtue of a resolution of said common council, passed August 1st, 1851.

By this resolution, common council resolved to lay out and open a street, to be called Quarry street, and instructed the committee on streets to give notice thereof to the owners of land, and also instructed the committee to treat with such owners, in behalf of the city, for their lands, for the purpose aforesaid.

The committee subsequently reported that they had treated with the owners of land necessary to be taken for said street, and the city treasurer was instructed to pay the owners therefor. Commissioners were appointed to assess the amount paid to owners of land taken for the opening of said street, upon the owners of all houses and lots intended to be benefited by the opening and laying out of said street.

The commissioners made the assessment, and reported the same to common council. The report was ratified, and the city treasurer was authorized to demand and receive such assessments from the parties against whom they were made; and in case such parties failed to comply with such demand, he was directed to take the proceedings for that purpose prescribed in the 35th section of the original charter of the city of Newark.

Payment of the amount assessed against William Mulock was demanded, and not being paid, the treasurer sold the premises in question to satisfy the assessment and costs, and under this sale the plaintiff claimed title.

At the time of the said assessment, demand of payment, and sale, the said William Mulock resided in the city of Newark aforesaid, and had sufficient goods and chattels in the said city whereof the amount of the said assessment, with all costs and expenses thereon, might have been levied by distress and sale.

It further appeared, by said verdict, that the street directed to be laid out, as above stated, was a street or highway which had before then been laid out, opened, and used as such, and by the above-stated proceedings it had been merely altered.

The only petition upon which the said proceedings above mentioned were based, was one purporting to be a petition for the extension of Quarry street east from Broad street to the Passaic river, also west from Nesbit street to the Orange road. The petition was not signed by three-fourths of the owners of property on said road or street.

Upon this special verdict the plaintiff moved for judgment.

The cause was argued at February Term, 1857, before the CHIEF JUSTICE, and Justices OGDEN, POTTS, and VREDEN-BURGH.

*C. Parker*, for plaintiff.

*Pennington* and *Bradley*, for defendant.

The opinion of the court was delivered by

The CHIEF JUSTICE. The plaintiff claims title to the premises in question, by virtue of a sale thereof for a term of years, made by the treasurer of the city of Newark to raise and pay the amount of an assessment made against the owner of the premises, as and for his proportion of the expenses incurred by the common council, in laying out and opening a street in said city. It is found, by the special verdict, that at the time of the assessment and of the sale of the lot, Mulock, the then owner, resided in the city of Newark, and had sufficient goods and chattels within said city whereof the assessment against him, with the costs and expenses thereon, might have been levied by distress and sale.

The first objection to the validity of the title is, that by the charter, the city was bound to resort first to the goods and chattels of the party assessed, and could only make sale of the land in case sufficient goods and chattels for that purpose could not be found. But the language of the charter does not seem to warrant such construction. The 34th section declares that it shall be lawful, upon

default of payment of the assessment, to levy the same by distress and sale of the goods of the *owner* or *occupant* of the lot assessed. The 35th section provides that if default be made in the payment of the assessment, it shall be lawful to cause the real estate assessed to be sold at auction for a term of years to satisfy the assessment. It is, by the terms of the charter, optional with the city to resort, in the first instance, either to the goods and chattels of the *owner* or of the *occupant* or to the lot itself, to satisfy the assessment. The remedies are co-ordinate. It is not necessary that the goods and chattels of the owner, or the occupant of the lot, be exhausted before proceeding against the land.

The second objection to the validity of the plaintiff's title is, that more land was taxed to the plaintiff than he owned, so that the assessment was higher than it should have been. This constitutes no objection to the validity of the sale. The assessment was in its nature a judicial act. 1 *Dutcher* 412. If erroneous, the remedy of the party aggrieved was by appeal. It cannot be impeached collaterally.

The last objection to the validity of the plaintiff's title is, that the proceedings of common council to open the street for which the assessment was made are null and void, having been adopted without the requisite application of the land-owners for that purpose. It was held by this court, in the case of *The Treasurer of Camden* v. *Mulford, ante* 49, that the city ordinances directing new streets to be opened or altered were in their nature judicial; and if the city council had the power of opening or altering streets, the ordinance was not void, and could not be impeached collaterally, however irregular the proceeding may have been. This case falls within the principle of that decision. It is attempted to distinguish this case from that of The Treasurer of Camden *v.* Mulford on the ground that, in this case, there was no application to widen the street, and consequently the proceedings were

Martin v. Carron.

*coram non judice* and void. The distinction, though plausible, is not substantial. If the application be not signed by the requisite number of land-holders, there is, in judgment of law, no application, as required by the charter. The cases do not differ in principle. The whole action of council proceeds on the ground that they were opening a *new* street, not widening an old road or street; though it appears, by the special verdict, that there was an old road where this street is now opened. Council have power both to widen and alter existing streets and to open new ones. The proceedings in both cases are the same, except when a street is to be widened, an application for that purpose from three-fourths of the land-holders is necessary. There was no want of jurisdiction or power in council. The extent of the objection is, that the proceeding was irregular and voidable, not void.

The plaintiff is entitled to judgment.

Justices OGDEN and VREDENBURGH concurred.

POTTS, J. (dissenting). The premises in question belonged to one William Mulock, and were sold, by the treasurer of the city of Newark, to raise and pay the amount of an assessment of three dollars and twenty cents, with costs, &c., made against him, as owner, for his proportion of the expenses incurred in laying out and opening a certain street in said city, called Quarry street. They were sold, for a term of thirty years, to Enoch Bolles, who sold them to the lessor of the plaintiff. Carron is in possession, and defends as tenant of Mulock, or his representatives.

The validity of the lessor of the plaintiff's title is assailed upon three grounds, disclosed by the special verdict.

I. It appears, by the special verdict, that Mulock resided in Newark at the time the assessment was made and payment demanded, and at the time of the sale, and had sufficient goods and chattels in said city whereof the

amount of the assessment, &c., might have been made by distress and sale. And it is contended that the city could not legally sell the land until they had exhausted this remedy ; that the remedy against the land was cumulative merely, and not to be resorted to in the first instance.

The act incorporating the city of Newark provided three remedies for the collection of these assessments. The 34th section provided that on demand and default of payment it should be lawful for the mayor and common council, by warrant, to levy the same by distress and sale of the goods and chattels of the delinquent. The 35th section provided that if any assessment should not be paid, it should be lawful for the common council, upon notice as prescribed, and default, to sell the land, &c.; and the 36th section enacted that it should be lawful for the said mayor and common council, instead of the remedies above provided, if they should see fit in case of neglect or refusal to pay, &c., to sue for and recover the amount, &c. But whatever construction might have been put on these sections, they do not govern the case before the court. The proceedings which resulted in this assessment and sale were had subsequent to the supplement to the Newark charter, passed February 14th, 1850. The 2d section of that supplement provides that all assessments made for laying out, opening, altering, extending or widening any street, road, highway, or alley, under and by virtue of the act entitled " An act to incorporate the city of Newark, and this or any other supplement thereto," shall be enforced in the same manner as is provided in the 3d section of an act entitled " A further supplement," &c., passed February 10th, 1847. And the 3d section of the supplement last referred to provides expressly that the common council may, at their option, either bring an action, or, after giving the notice prescribed, sell the land, &c.

The effect of these provisions is to limit the city authorities to two remedies for the recovery of assessments for the above purposes, the one by suit, the other by pro-

ceeding against the land, and to give the right to either remedy, in preference to the other, as they may see fit to elect. The first ground of objection to the title acquired by the plaintiff's lessor must, therefore, fail.

II. The second ground relied on to defeat the title of the plaintiff's lessor is an error in the assessment, the lot having been assessed as a lot of thirty feet front, whereas it has only a front of twenty-two feet six inches. The special verdict finds that, in making the assessment on Mulock 'and other owners of land, the amount thereof was proportioned to the amount of land fronting on Quarry street, owned by each of such land-owners respectively, respect being also had to the depth of the respective lots and the improvements thereon, there being a house on said Mulock's lot. There is no doubt, therefore, that the mistake in the extent of Mulock's front occasioned a corresponding error in the amount of the assessment against him. But an error of this description does not invalidate the proceedings had under the assessment or affect the validity of the sale. The assessment was in the nature of a judicial adjudication, and so long as it stood unassailed by any direct proceeding, the power of the city to enforce it remained unimpaired. Mulock had his remedy by *certiorari*, and might have had the assessment set aside if erroneous or illegal. He neglected this mode of redress, and he could not in this collateral way avail himself of any error or irregularity in the assessment itself, nor can those who represent him. This objection cannot, therefore, be sustained.

III. The third ground taken against the validity of the title produced by the plaintiff is of a more serious character. It appears, by the special verdict, that the proceeding upon which the assessment and sale is founded was a proceeding for laying out and opening a certain street, to be called Quarry street, in the north ward of Newark, " commencing at or near McNeil's house, at a point where Quarry street has already been laid out, from

thence running north, eighty-nine and a quarter degrees west, to Nesbit street;" whereas, the street so laid out and opened, or directed so to be, was a street or highway then already laid out and opened and used in said city, and was merely *altered* by the said proceedings of the said common council, and became such street or highway before the passage of the act to incorporate the city of Newark, the same having been laid out and defined by a survey thereof in 1753, which survey was recorded, &c.

The 30th section of the charter of the city of Newark, which gives the power to lay out, open, vacate, alter, and widen streets in the city, provides expressly "that no street, road, highway, or alley in said city shall be altered or widened as aforesaid, except on the application in writing to the said common council by three-fourths of all the owners of land lying on said road, highway, or alley." The special verdict finds that this provision was not complied with. Indeed it is quite clear, from all the facts found by the jury, that the city authorities acted throughout under a mistake. They were not aware that a public street had been laid out, opened, and used along the line of route indicated; and instead of taking the necessary steps to alter it, so as to meet the public necessity, they proceeded to lay out and open a new street on the line of the old one.

The charter, as I understand it, confers no power on the common council to alter or widen any existing street, except on the application in writing of three-fourths of all the owners of land lying on said road, highway or alley. If this is so, it follows that such application is necessary to give the council *jurisdiction*. The power of the corporation to interfere with private property is derived by express grant from the legislature; and where the grant of power is limited in its terms, the power can only be exercised within the limitation. So here, where the power to alter a street is limited to the case where three-fourths of all the owners of land lying on said street

apply to the common council for the alteration, unless such application is made, the common council, in my judgment, have no more power to make the alteration than if the charter was entirely silent on the subject. The want of jurisdiction is fatal, though the proceeding is judicial in its nature; and such proceeding, if void, may be treated as a nullity. It is different where the common council has jurisdiction, and the defect is in the nature of a mere irregularity in the proceeding. There the act done is voidable only, and the party who objects must resort to his remedy to have the proceeding set aside. As, therefore, it appears in this case that the preliminary steps which were necessary to give the common council jurisdiction were not taken, and three-fourths of the land-owners did not apply for the alteration, I am of opinion the council had no authority to incur the expenses for which the assessment in this case was made; the assessment itself was illegal and void, and the sale conveyed no valid title to the purchaser. I am not able, therefore, on this point, to concur with the majority of the court in sustaining the judgment below.

REVERSED, 2 *Dutch.* 594. *Cited in Evans v. Mayor, &c., of Jersey City* , 6 *Vr.* 384.